## SHENANGO FURNACE CO. v. MEYER et al.

### THE SHENANGO.

### Civil Action No. 783.

District Court, E. D. Wisconsin.
June 28, 1943.

Duncan, Leckie, McCreary, Schlitz & Hinslea, of Cleveland, Ohio, and Chas. B. Quarles and Louis Quarles, both of Milwaukee, Wis., for libelant.

Stover & Stover, of Milwaukee, Wis., for respondents.

W. J. Mattison, Asst. City Atty., of Milwaukee, Wis., for impleaded respondent.

DUFFY, District Judge.

Libelant is the owner of the steamer "Shenango", a vessel 607 ft. in length with a 58 ft. beam, which was damaged during the evening of August 18, 1941, when the vessel struck a rigid cluster of piles located near the southwest corner of the abutment of the Sixth Street Bridge over the Menomonee River in Milwaukee.

Libelant instituted these proceedings against the individual defendants who were the owners of the tugs "W. H. Meyer" and "Welcome" and who operated their business under the style of Milwaukee Tug Boat Line. The city of Milwaukee was impleaded upon the allegation of the owners of the tugs that the collision resulted from the combined negligence of the vessel owner and the city of Milwaukee.

The "Shenango", in charge of the tugs "W. H. Meyer" which had the stern line and the "Welcome" which had the bow line, was being towed stern first down the Menomonee River to the harbor. The vessel's engines were not worked during the first part of the tow job operation, and were only worked thereafter in response to the whistled signals of the stern tug. The wind on the night of August 18 was not of sufficient velocity to affect the operation in any way.

There is a jog in the river toward the north immediately east of the eastern end of the Center Street Fuel Company dock. As the bow of the "Shenango" came opposite this end of the dock, the stern tug began to pull the stern of the vessel to the north, it being contemplated that when the bow had cleared the dock, the bow tug would push the bow to the north and the stern tug would then swing the stern to the south and thereby line up the vessel to tow it through the draw.

Pursuant to the permit from the War Department when the Sixth Street Bridge was constructed, the city is required to have a clear channel width of 75 ft. Prior to the summer of 1941 the city of Milwaukee had maintained a cluster of spring piling near the southwest corner of the bridge abutment. However, in May or June of 1941, the city removed the cluster of spring piling and built the caisson without obtaining from the Secretary of War a modification of the permit under which the bridge was built. The new structure consisted of a circular tube of steel sheeting, driven upright into the bed of the river, which tube was filled with concrete to within a short distance of the top and heavy piling was driven around the circumference. Large steel bands were placed around the piling. The caisson as thus constructed narrowed the width of the navigable channel nearly 5 ft. and was a rigid structure in contrast with the cluster of spring piling which was somewhat yielding.

As the stern of the boat came close to the bridge, it was apparent that there was danger of a collision with the north abutment. The stern way was about two miles per hour. The stern tug gave a signal for the vessel to start its engines forward, and at the same time it began to pull the stern of the vessel to the south. Although the "Shenango's" engines started, the swing to the south was so great that the side of the vessel struck the caisson with considerable force approximately 50 ft. forward of the rudder post.

The collision with the caisson was caused by the negligence of the stern tug. The crew of the vessel did nothing except to assist the stern tug in trying to overcome the dangerous astern movement. Where the vessel is in charge of the tugs, as here, the obligation of the towed vessel is to conform her own navigation to the movements of the tugs, so as to assist them as far as it is practicable to do so and to exercise proper diligence and efficiency in obeying the orders of the tugs. The W. G. Mason, 2 Cir., 142 F. 913, 914. See, also, The Margaret, 94 U.S. 494, 496, 24 L.Ed. 146.

However, the damage to the vessel would have been much smaller if the city of Milwaukee had not negligently established and maintained the rigid caisson within the confines of the navigable channel. Although it is probable that the vessel would have struck the spring protection piles which did not extend into the 75 ft. navigable channel, yet it is obvious that colliding with the rigid, unyielding

structure placed partly in the navigable channel by the city of Milwaukee greatly increased the damage to the vessel.

I conclude that the damage to the "Shenango" was the result of the concurrent negligence of the owners of the tugs and the city of Milwaukee. United States v. Norfolk-Berkley Bridge Corp., D.C., 29 F.2d 115.